IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:98cr110-01

SPENCER BOWENS

### MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO § 404 OF THE FIRST STEP ACT OF 2018 (ECF No. 371) (the "Second Renewed Motion"), the Government's Response in Opposition to Defendant's Second Renewed Motion under § 404(b) of the First Step Act (ECF No. 372), the DEFENDANT'S REPLY IN SUPPORT OF SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 373), the Government's Supplemental Response to Defendant's Second Renewed Motion under § 404(b) of the First Step Act (ECF No. 386), the DEFENDANT'S SUPPLEMENTAL REPLY IN SUPPORT OF SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 387), the DRUG GUIDELINES AMENDMENT APPLICATION WORKSHEET (ECF No. 277), and the PRESENTENCE REPORT ("PSR") (ECF No. 277-1) and the Updated Worksheet in Response to Motion for Compassionate Release

(ECF No. 388).[1]  Most recently, the parties have filed DEFENDANT'S RESPONSE TO THE COURT'S OCTOBER 15, 2025 ORDER (ECF No. 396), the Government's Statement of Position Regarding Benchmark at Step One of Concepcion and Troy (ECF No. 397); DEFENDANT'S RESPONSIVE STATEMENT OF POSITION PURSUANT TO THE COURT'S OCTOBER 16, 2025 ORDER (ECF No. 398), and the Government's Response in Opposition to Bowens' Statement of Position (ECF No. 399).  Having reviewed and considered the foregoing briefs and information, and the entire file,[2] the DEFENDANT'S SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO § 404 OF THE FIRST STEP ACT OF 2018 (ECF No. 371) will be denied.

## BACKGROUND

In April 1998, a federal Grand Jury in Richmond, Virginia, returned a six-count Indictment naming Spencer Bowens and Tyrone Wilkins as the defendants. Count One charged both defendants with Conspiracy to Distribute "Crack," Powder Cocaine, and Heroin, in violation of 21 U.S.C. § 846. Count Two charged Spencer Bowens with Conspiracy to Launder Monetary Instruments, in violation of

---

[1] ECF No. 388 erroneously refers to the Second Renewed Motion as one for compassionate release but that does not affect the accuracy of the substantive information reflected therein.

[2] Bowens and the Government have served several notices of additional authority which also have been considered.

18 U.S.C. § 1956(h). Count Three charged Spencer Bowens and Tyrone Wilkins with Concealing a Person from Arrest, in violation of 18 U.S.C. § 1071. Count Four charged Spencer Bowens and Tyrone Wilkins with Concealing a Person from Arrest from August 26, 1996, and continuing thereafter up to an including November 26, 1996, in violation of 18 U.S.C. § 1071. Count Six charged Spencer Bowens with Obstruction of Justice, in violation of 18. U.S.C. § 1503.

Bowens entered pleas of not guilty to each count. The United States dismissed Count Two (the money-laundering charge) and his case was tried to a jury which found Bowens guilty on Counts One, Three, Four, and Six. On appeal, the Fourth Circuit vacated the convictions on Counts Three and Four. Bowens was not charged in Count Five. So, at this time, Counts One and Six are the only counts of conviction to be considered.

The resolution of the Second Renewed Motion begins with an understanding of the facts respecting the two remaining offenses of conviction and the sentence that ensued, including the affirmance of those convictions and the sentence by the United States Court of Appeals for the Fourth Circuit. With that background in mind, the analysis will turn to the facts and theories on which the request for relief under § 404 is based and how the theories have changed to their present state. Finally, mindful of the applicable legal framework, the analysis considers

3

Bowens' eligibility for § 404 relief and whether he has established that such relief is appropriate.

### A.    The Pertinent Facts as Shown by the Trial Record and the Appellate Decision

According to the record and the "Offense Conduct" section of the PSR (ECF No. 284), Bowens engaged in a wide-ranging conspiracy run by a violent drug organization known as the "Poison Clan." The drug-trafficking conspiracy started in 1992 and continued until April 7, 1998.    Bowens was charged with distribution and possession with intent to distribute more than 50 grams of cocaine base, more than 5 kilograms of cocaine powder, and an unknown quantity of heroin. As part of the conspiracy, Bowens controlled the North Carolina and South Carolina operations of the Poison Clan that distributed "crack" and powder cocaine throughout the Southeastern United States.

The Fourth Circuit's decision succinctly set out the facts about the operation and extent of the crack conspiracy, its objects, and Bowens' role in it.    The Court of Appeals explained:

> The drug conspiracy charged in this case concerned a large crack distribution network started out in Brooklyn, New York, in the mid-to-late 1980s.    Later, it extended north to Albany and the outskirts of Boston and south to Baltimore, Washington, Richmond, Raleigh, Charlotte, and Columbia, among other cities.

* * *

For example, by the end of 1993 the organization's Richmond operations, where shifts of dealers sold crack 24 hours a day, generated as much as $80,000 per week.

* * *

A man named Dean Beckford was the head of the Poison Clan. Bowens was Beckford's confederate, eventually overseeing the organization's crack dealing operations in North and South Carolina. Bowens' responsibilities included procuring drugs for couriers to deliver to co-conspirators in the Carolinas, arranging meetings between couriers and local dealers, and (on at least one occasion) cooking powder cocaine into crack. In March 1994 Bowens traveled from New York to Columbia, South Carolina, where he remained long enough to set up a crack distribution operation on behalf of the Poison Clan.

* * *

Other members of the organization testified that receiving a command from Bowens was tantamount to receiving a command from Beckford and that Bowens was Beckford's 'surrogate.'

* * *

[t]he Poison Clan was a large crack distribution ring, led by Beckford, that operated up and down the East coast, including in Richmond. And Bowens had a hand in most of what Beckford did. Bowens was intimately involved in the leadership of the Poison Clan. He and Beckford referred to each other as 'partners,' and Bowens was described as Beckford's surrogate and as a member of 'the inner circle.' At one point, Bowens was dispatched to set up a crack distribution

5

> operation in South Carolina. Bowens was also
> Beckford's counselor and confidant, advising
> him to flee New York when Beckford became
> 'hot.' He arranged a hiding place for Beckford
> so that when Beckford evaded capture for the
> first time, their drug partnership was able to
> continue. Bowens provided Beckford with a
> falsified South Carolina vehicle registration
> and a phony New Jersey driver's license. While
> Beckford hid out in the Carolinas he and
> Bowens continued to run the drug ring
> together, arranging the delivery of powder
> cocaine, cooking the powder into crack,
> distributing the crack to dealers, and sharing
> equally in the proceeds. When Beckford finally
> was arrested, Bowens said he wanted to 'keep
> the operation going.'

United States v. Bowens, 224 F.3d 302, 305, 307-08 (4th Cir. 2000).

Bowens' sentence was imposed by using the guidelines for crack cocaine. Based on the record and the PSR, the Court found that the quantity of crack cocaine that was to be attributed to Bowens was 33 kilograms, the quantity of powder cocaine attributable to him was 6 kilograms, and the attributable quantity of heroin was 27 grams. DRUG GUIDELINES AMENDMENT APPLICATION WORKSHEET (ECF No. 277); Updated Worksheet in Response to Motion for Compassionate Release (ECF No. 388, p. 2 ); Transcript (ECF No. 99, pp. 29-30, 32).

On appeal, Bowens argued that, because the Indictment charged conspiracy to distribute crack cocaine, powder cocaine, and heroin, it was not possible to know whether the jury had found that the object of the conspiracy was crack distribution, the most

6

heavily punishable object of the conspiracy and the predicate for the guidelines that were used to calculate Bowens' sentence. United States v. Bowens, 224 F.3d at 314. That issue arose because the jury returned a general verdict and the jury was instructed that conviction could occur if the jury "found beyond a reasonable doubt that Bowens had entered into an agreement to distribute any of those three substances." Id. Bowens argued that it was plain error to have submitted the case to the jury without a special verdict form (requiring the jury to identify the substance(s) that were the object of the conspiracy. The Fourth Circuit first noted that: "[s]ince Bowens did not object to the general verdict, request a special verdict, or object to being sentenced based on conspiracy to distribute crack cocaine, we review for plain error." Id. Then, the Court of Appeals held that the failure to use a special verdict form was plain error affecting the defendant's substantial rights, id. at 315. However, the Court of Appeals decided not to notice that error because it did not "'seriously affect the fairness, integrity or public reputation of judicial proceedings'" (citations omitted) and because

> [u]nder these circumstances, we are confident that no miscarriage of justice will result, nor will the fairness or integrity of the proceedings be affected, from our declining to notice the error in sentencing.

Id. at 316.

7

To reach those conclusions, the Fourth Circuit examined the record respecting the drugs that were trafficked during the course of the conspiracy, and, having done so, held that:

> [t]he overwhelming and essentially uncontroverted evidence shows that Bowens was a major participant in a large crack distribution conspiracy. Therefore, we decline to notice the error.
>
> This was not a trial about a heroin conspiracy. Every government witness who testified about the conspiracy testified to crack dealings, preparation of crack, and delivery of either crack cocaine itself or powder cocaine to be cooked into crack.
>
> * * *
>
> In contrast to this overwhelming evidence of a large, complex network dedicated to buying powder cocaine, cooking it into crack, distributing it to cities along the east coast, and delivering the cash proceeds back to the organization's leaders in New York, no witness testified to buying, manufacturing, or selling heroin.
>
> * * *
>
> Consequently, even the isolated reference in the record to heroin is inseparable from the overwhelming evidence of a conspiracy to distribute crack cocaine.

Id. at 315-16.

By the time he was convicted in this case, Bowens had a history of engaging in violent crime. On January 19, 1982, Bowens (at the age of 17) was arrested, and later convicted, on the

8

following charges in the Supreme Court of Kings County, Brooklyn, New York: (1) First Degree Robbery; (2) First Degree Criminal Use of a Firearm; and (3) Assault With Intent to Cause Serious Injury With a Weapon. Seven months later, on August 6, 1982, Bowens was arrested, and later convicted, on the following charges: (1) Second Degree Robbery; and (2) Assault With Intent to Cause Injury.

At the time of sentencing, Count One qualified as a predicate for a Career Offender Enhancement. So, Bowens was accorded that enhancement with the attendant result of a Criminal History Category VI. The statutory term of imprisonment for Count One, based on the quantity of crack cocaine (33 kilograms), was ten years to life. And, for Count Six, the statutory maximum was ten years. The Guidelines at sentencing provided a Base Offense Level of 38, which three enhancements (possession of dangerous weapons – 2; role in the offense – 3; obstruction – 2) brought to Level 45, which by rule was treated as 43.[3] The Guideline sentence for Count One was life imprisonment. For Count Six, the Guideline sentence was 10 years. (ECF No. 284, p. 19, Part D, ¶ 73) and Worksheet D (ECF No. 284, p. 21). Bowens was sentenced to life imprisonment.[4]

---

[3] U.S.S.G. § 5, Part A, Application Note 2.

[4] The Career Offender Enhancement can, but, in this case did not, result in an increase in the offense level. (ECF No. 284,

The Guidelines Base and Adjusted Offense Levels remain the same, based on the quantity of crack cocaine (33 kilograms). However, today, Bowens would be assessed six criminal history points (not eight) and he would not be a career offender. His Criminal History Category would be III. The Guideline range for imprisonment would be life. On appeal, the Fourth Circuit vacated the convictions on Counts Three and Four, but affirmed the convictions, and sentences, on Counts One and Six.

### B.    Eligibility Under § 404

Bowens was convicted of Count One for which the Fair Sentencing Act modified the quantity of crack cocaine to trigger the statutory penalty after he was convicted, and he has neither received a reduction of sentence nor lost a motion seeking such relief. The parties agree that Bowens is eligible for a reduction of sentence under § 404.

### C.    The Asserted Basis For § 404 Reduction of Sentence

The Second Renewed Motion leads with the heading that "Mr. Bowens Fully Deserves to be Resentenced to a Sentence Far Lower Than Life Imprisonment." (ECF No. 371, p. 9). That is followed

---

Worksheet A, pp. 22-25 (pagination number of ECF system)).

10

by an extensive presentation devoted entirely to explaining Bowens' post-conviction rehabilitation[5] which concludes by saying:

> [h]aving established that Mr. Bowens fully deserves to be resentenced to a prison term shorter than life imprisonment, the question then becomes what sentence should the Court impose?  As argued next, the Court should sentence Mr. Bowens to time served, so as not to run afoul of the Constitution and to avoid unwarranted disparity.

(ECF No. 371, p. 14) (emphasis added).  In other words, the Second Renewed Motion bases the asserted entitlement to § 404 relief only on Bowens' post-conviction rehabilitation.  At oral argument, his counsel agreed that was so.

The Government addressed the post-conviction rehabilitation issue by arguing that, although Bowens' post-conviction rehabilitation was commendable, it did not outweigh the nature and seriousness of the offense (ECF No. 372, pp. 6-9).  In so doing, the Government relied on Bowens' offense conduct, role in the offense of conviction, and the amount of crack cocaine attributed to Bowens and argued that, based on those points, 18 U.S.C. § 3553(a) foreclosed a reduction of sentence.

In reply, Bowens did not further address the rehabilitation issue, except to make the conclusory statement that the Government's view of § 3553(a) was too restrictive.  However, at

---

[5] ECF No. 371, pp. 9-14.

11

oral argument, Bowens offered the testimony of Santra Rucker who has known Bowens since well before he was imprisoned and who talks to him by telephone frequently. Rucker, herself a convicted drug-trafficker, now serves as a counselor to those who have been imprisoned, particularly for long terms. Rucker testified that Bowens is now an entirely different person than the man who committed the crimes of conviction in the 1990's.

The remainder of the Second Renewed Motion is addressed to what the reduced sentence should be. Those contentions are:

1.   **The Court Should Resentence Mr. Bowens to No More Than Time Served Because the Constitutionally Applicable Statutory Maximum Is 20 Years and a Reduced Sentence of Time Served Would Avoid Unwarranted Disparity.**

(ECF No. 371, pp. 15-19).

2.   **Even if the Court Determines the Applicable Statutory Maximum to Be 40 Years Rather Than 20 Years, the Court Should Impose a Reduced Sentence of No More Than 348 Months.**

(ECF No. 371, pp. 19-23).

3.   **Other Defendants Sentenced to Life Imprisonment in This District Under the Mandatory Guidelines in Cases Much Like Mr. Bowens's Case Have Had Their Sentences Reduced Pursuant to § 404 of the First Step Act.**

12

(ECF No. 371, pp. 23-26).

This case was held in abeyance pending a decision in _Concepcion v. United States_. ORDER, ECF No. 356, granting Motion to Hold Case in Abeyance (ECF No. 348). The Second Renewed Motion was filed after _Concepcion_ was decided, and, although it cites _Concepcion_, but it did not do what _Concepcion_ required. Nor did the briefing adhere to the instructions in _United States v. Troy_, 64 F.4th 177 (4th Cir. 2023) which gave further instruction about how to comply with _Concepcion_. So, another round of briefing was required and that was concluded on May 30, 2025 (ECF No. 387). Even after that round of briefing, Bowens' position was unclear respecting how the instructions in _Concepcion_ and _Troy_ should be applied to the Second Renewed Motion. So, the Court called for oral argument on October 10, 2025. At oral argument, Bowens' position on how to determine the statutory maximum component of the _Concepcion/Troy_ benchmark substantially shifted from the views expressed in the Second Renewed Motion. Hence, the parties were asked to submit Statements of Position to flesh out their views on the newest iteration of Bowens' view on how to determine the _Concepcion/Troy_ benchmark at Step One. Specifically, they were directed to address:

> When considering a First Step Act motion, should a Court in determining the 'benchmark Guidelines range,' _Concepcion v. United_

13

> <u>States</u>, 597 U.S.  481,  498 n.6 (2022), use
> only the <u>minimum quantity in the indictment</u>
> (and admitted to in a plea hearing, found by
> a jury and/or otherwise affirmed on appeal) to
> determine the defendant's <u>revised statutory</u>
> <u>range</u> after the Fair Sentencing Act, or should
> it use any larger quantities found by the
> Court during a sentencing hearing?

ORDER, ECF No 394.

The analysis of the Second Renewed Motion will proceed with the most recent positions in mind.  Before undertaking that task, it is necessary to recall the instructions from <u>Concepcion</u> and <u>Troy</u>, and the analytical framework for analyzing the Second Renewed Motion.

## DISCUSSION

### A.    The Applicable Law

Congress passed the Fair Sentencing Act of 2010 to correct the wide disparity between crack and powder cocaine sentencing. The Act reduced from 100:1 to 18:1 the ratio of crack cocaine powder cocaine that triggered certain mandatory minimum punishments.  As a result, the Act increased the amount of crack cocaine needed to trigger a 5 (mandatory minimum)-to-40 year sentencing range from 5 grams to 28 grams.  The Act also increased the amount of crack cocaine needed to trigger a 10-year (mandatory minimum) to life imprisonment sentencing range from 50 grams to 280 grams. §§ 2(a)(2), 124 Stat. 2372.

14

The Fair Sentencing Act did not apply retroactively, but in 2011, the Sentencing Commission amended the Sentencing Guidelines to lower the Guidelines range for crack-cocaine offenses and applied that reduction retroactively for some defendants. In 2018, Congress enacted the First Step Act, authorizing district courts to "impose a reduced sentence" for defendants serving sentences for certain crack-cocaine offenses "<u>as if</u> sections 2 and 3 of the Fair Sentencing Act . . . <u>were in effect at the time the covered offense was committed</u>." Pub. L. 115-391, § 404(b), 132 Stat. 5222 ("§ 404") (emphasis added).

In <u>Concepcion v. United States</u>, 142 S. Ct. 2389 (2022), the Supreme Court of the United States instructed how to assess motions for reduction of sentence under § 404. In particular, the question presented in <u>Concepcion</u> was "whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." <u>Id.</u> at 2396. The Supreme Court held: "they may." <u>Id.</u>

Before applying that holding from <u>Concepcion</u> to the facts of this case, it is appropriate to take stock of what the Supreme Court said in arriving at that conclusion. The first sentence in <u>Concepcion</u> is:

15

> There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'

Concepcion v. United States, 142 S. Ct. at 2395 (citation omitted).

The articulation of that tradition was followed by the equally important instruction that:

> When a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction.

Ibid. (emphasis added).  And, then there followed the observation that:

> Similarly, when a defendant's sentence is set aside on appeal, the district court at resentencing can (and in many cases, must) consider the defendant's conduct and changes in the Federal Sentencing Guidelines since the original sentencing.
>
> \* \* \*
>
> Congress enacted the First Step Act against that backdrop.

Ibid. (emphasis added).  Those fundamental precepts are important both to understanding Concepcion and to applying it.

And, of course, both those tasks are aided by knowing the record to which the legal principles were applied.  To that end, we first look at Concepcion's request for a reduced sentence under § 404.  Concepcion argued that the Guidelines had changed since his sentencing and that he would no longer be considered a career

16

offender because:    (i) one of the predicate convictions that permitted application of the career offender enhancement had been vacated; (ii) the remaining convictions would no longer be considered crimes of violence that trigger that enhancement. Thus, said Concepcion, without the career offender enhancement, the revised Guideline range would be considerably different than that which had obtained at his sentencing.

Second, Concepcion argued that a sentence reduction was called for on the basis of post-sentencing evidence of rehabilitation. In particular, he relied on "successfully completing drug and vocational programming . . . [and] evidence of a stable reentry plan and a letter from the Bureau of Prisons' chaplain attesting to his spiritual growth while incarcerated." Id. at 2397-98. The Supreme Court prefaced its decision respecting whether such evidence could be considered by explaining:

> Federal courts historically have exercised this broad [sentencing] discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that modify an original sentence.

17

Id. at 2398 (emphasis added).  To underscore that precept and to link it to the principle of individualized sentencing, the Supreme Court explained:

> There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the <u>sort of information they may consider</u>' at an initial sentencing proceeding.

Id. at 2398 (citation omitted) (emphasis added).

* * *

> That unbroken tradition characterizes federal sentencing history as well.  'Federal judges exercising sentencing discretion have always <u>considered a wide variety of aggravating and</u> <u>mitigating factors relating to the</u> <u>circumstances of both the offense and the</u> <u>offender.</u>' Indeed, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to <u>consider every</u> <u>convicted person as an individual</u> and every case as a unique study in the human failings that sometime mitigate, sometimes magnify, the crime and the punishment to ensue.'

Id. at 2339 (citations omitted) (emphasis added). So, on that basis, the Supreme Court held that:

> Congress in the First Step Act simply did not contravene this well-established sentencing practice.  Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion.

Then, turning to the third section of the First Step Act, § 404(c), the Supreme Court identified two "explicit limitations on

18

the relief that was made available by the statute." Both limitations simply prohibit the making of motions in the event of either a previous reduction under the Fair Sentencing Act, section 2 or 3, or if a motion made under § 404 had been denied after a complete review. Id. at 2402. ("A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act").

Next, the Supreme Court surveyed the kinds of information that had been considered by district courts in deciding sentence reduction motions under § 404. That included evidence of post-sentencing rehabilitation, evidence of unrelated Guideline amendments when raised by the parties, post-sentencing evidence of violence or prison infractions, and non-retroactive Guideline amendments to help inform whether to reduce sentences at all and, if so, by how much. Id. at 2402-03. With that in mind, the Supreme Court then clearly held "that the First Step Act allowed district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." Id. at 2404.

Concepcion also made clear the fundamental limit that lies at the core of the First Step Act and instructed how the process of deciding motions under § 404 is to proceed. And, in United States

19

v. Troy, 64 F.4th 177, 183-184 (4th Cir. 2023), our Court of Appeals emphasized that fundamental limit and summarized that process, explaining:

> A district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act. Rather, the First Step act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range 'anchor[s]' the sentencing proceeding. The district court may consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.
>
> * * *
>
> In other words, Concepcion instructs district courts exercising their discretion under the First Step Act to proceed in two steps. First, they must recalculate the movant's Guidelines range 'only to the extent it adjusts for the Fair Sentencing Act.' Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence.
>
> Thus, while a district court may consider other changes in the law when determining what reduction, if any, is appropriate in an individual case, the proper 'benchmark' for the district court's analysis (and for our review) is the impact of the Fair Sentencing Act on the defendant's Guidelines range.

Ibid. (citations omitted) (emphasis added).[6]

It is within that framework that the Second Renewed Motion must be considered.

### (1)  The Benchmark: Concepcion/Troy Step One

The benchmark, as defined by Concepcion and Troy is a Guidelines range that "reflect[s] the retroactive application of the Fair Sentencing Act." United States v. Troy, 647 F.4th at 183.  To establish the benchmark, the district court must "calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." Id. (emphasis added). And, it is "[t]hat Guideline range that 'anchor[s] the sentencing proceeding.'" Id.

What then are those "Fair Sentencing Act's amendments?" Id. They are those in Amendment 750 (that lower the crack cocaine levels) and 759 (making those levels retroactive to the "time of the offense.") Concepcion and Troy tell clearly that a "district

---

[6] In Troy, the Fourth Circuit also noted that:
>     Prior to Concepcion, we held that a district court considering a sentence reduction motion under the First Step Act must correct retroactive Guideline errors when recalculating a movant's benchmark Guidelines range. See United States v. Chambers, 956 F.3d 677, 673-75 (4th Cir. 2020).

So, after Concepcion that aspect of Chambers is no longer controlling.

court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." United States v. Troy, 647 F.4th at 183 (quoting Concepcion v. United States, 142 S. Ct. at 2404 n.6 (emphasis in original). See also United States v. Smith, 75 F.4th 459, 465 n.6 (4th Cir. 2023).

The relevant amendments trigger both the 5 to 40 year and the ten years to life sentencing requirements, depending on the quantity threshold set in the amendments. How that is done is important in resolving the dispute between the Government and Bowens over the benchmark. Amendment 750 changes the amount of crack that triggers the particular sentence. The pre-amendment 5 to 40 year sentence was triggered by 5 grams of crack cocaine. Amendment 750 changed that trigger to 28 grams of crack cocaine. The pre-amendment 10 year to life sentence was triggered by 50 grams of crack cocaine. Amendment 750 changed that trigger to 280 grams of crack cocaine.[7]

The first inquiry is whether Amendment 750 effected a change in what the applicable statutory penalties would have been at the

---

[7] Also, the triggers for those sentencing levels remained the same at 500 and 5,000 grams of powder cocaine, respectively. The ratio of crack cocaine to powder cocaine then became 18:1 (post-Amendment 750) rather than 100:1 (pre-Amendment 750).

time of the offense.    The statutory maximum penalty for crack cocaine offenses, both at the time of the offense, sentencing, and now (considering Amendments 750 and 759) is based on the quantity of crack cocaine involved.    At the time of the offense and at sentencing, the quantity that called for 10 years (mandatory) to life imprisonment was 50 grams or more.    Today, the threshold amount for that penalty is 280 grams. The record is that 33 kilograms, far above either threshold, was attributed to Bowens. So there is no change in the statutory maximum sentence for Count One based on the quantity of crack cocaine (33 kilograms) attributable to Bowens.[8]

The Second Renewed Motion, however, posits a different statutory maximum sentence.    Specifically, § F of the Second Renewed Motion contains the heading:

> Even if the Court Determines the Applicable Statutory Maximum to Be 40 Years Rather Than 20 Years, the Court Should Impose a Reduced Sentence of No More Than 348 Months.

---

[8] Both Worksheets reflect that Bowens' Criminal History would change from VI to III because, by a change in the law (a decision of the United States Court of Appeals for the Fourth Circuit). So, he would no longer be eligible for the Career Offense Enhancement that originally placed him in Criminal History Category VI.  That is correct.  But, at Step One, a change in law of that sort is not considered.  It may be considered at Step Two.

(ECF No. 371, p. 19).[9] However, the Renewed Second Motion did not explain how the statutory maximum penalty for Count One would be 40 years. Indeed, the Renewed Second Motion makes no mention at all of a statutory maximum of 40 years, except in the heading of § F. Nor is that topic mentioned in the DEFENDANT'S REPLY IN SUPPORT OF SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 373) or the DEFENDANT'S SUPPLEMENTAL REPLY IN SUPPORT OF SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 (ECF No. 387).

Now that may well be because the Government's original response had a header that said "Bowens' post-Fair Sentencing Act statutory maximum is 480 months [40 years]" (ECF No. 372, p. 1) and contained the unexplained statement "[t]he Court's conclusion at sentencing and the Fourth Circuit's decision on direct appeal compel the conclusion that the jury would have found the relevant quantity sufficient to trigger the 40-year maximum." Id. at 5. Neither reference is supported by a citation that pertains to the statutory maximum sentence. Whatever those two unsupported

---

[9] That rather garbled section seemed to be based on a change in the law (Bowens is no longer a Career Offender) and a policy disagreement with the results effected by Amendment 750. But, neither of those rationales may be considered in Concepcion/Troy Step One. Specifically, it asked the Court to adopt a 1:1 ratio and to reject the "flawed" 18:1 ratio effected by Amendment 750.

references might have meant when filed in ECF No. 372, they are of no moment now because they were disclaimed later in the Government's Supplemental Response to Defendant's Second Renewed Motion under § 404(b) of the First Step Act (ECF No. 386, p. 2) citing "subsequent case law" as the reason.

At oral argument, Bowens argued that the benchmark should be determined by the amount of crack cocaine attributed to him, but by the amount alleged in the Indictment (here 50 grams or more). That argument goes like this:  The Indictment alleges 50 grams or more and Amendment 750 has the penalty for that amount as 5-40 years if the quantity exceeds 28 grams so 40 years is the maximum and the statute caps the guideline (life) at 40 years.

As a result of post-argument briefing, there is a better understanding of where the parties are in agreement about the benchmark and where they are not, and why.

As to the calculation of the Guidelines,  Bowens says:

> [w]e agree that the Court's drug weight determination at Mr. Bowens' sentencing hearing is binding with respect to the calculation of the applicable offense level under the 2010 Sentencing Guidelines mandated by the Fair Sentencing Act for purposes of the calculation of the benchmark Guideline range. We therefore agree that the base offense level for purposes of Step One of the Concepcion framework remains at a level 38 based on the Court's drug weight finding at sentencing. . . .

(ECF No. 398, pp. 5-6).  The Government agrees.  (ECF No. 397, p. 1).  So the Guidelines recalculated remains at life imprisonment.

However, there is disagreement over the statutory maximum punishment.  The Government contends that the statutory maximum is life imprisonment based on the crack cocaine drug quantity found by the Court at sentencing.10  (ECF No. 397, pp. 3-8).  Bowens argues that the statutory maximum is 5-40 years imprisonment based on the crack cocaine amount (50 grams or more) alleged in Count One of the Indictment.  His argument is:

> Mr. Bowens is only eligible for a reduced sentence under the First Step Act because the Fair Sentencing Act modified the statutory penalties for his offense of conviction from 10 years to life to years to 40 years of imprisonment. And, under the U.S. Sentencing Guidelines, "where the statutorily authorized maximum sentence is less than the minimum appliable guideline range, the statutorily authorized maximum sentence shall be the guideline range.

(ECF No. 396, p. 3).  Relatedly, Bowens contends:

> The determination that Mr. Bowens' statutory penalties were altered by the Fair Sentencing Act is unaffected by the Court's determination of the attributable drug weight at sentencing, because that determination related to the Guidelines, not the statutory range.

---

10  Alternatively, the Government argues that the same is true, life imprisonment, based on the statutory maximum for cocaine powder (5 kilograms charged in the Indictment, 6 kilograms found by the Court at sentencing).

The result, according to Bowens, is that the statutory maximum punishment for 28 grams or more (which includes 50 grams) (40 years imprisonment) operates as a cap on the Guideline sentence of life imprisonment even though the undisputed weight of crack cocaine attributed to him was 33 kilograms. (ECF No. 398, p. 6) ("the resulting guideline range of life imprisonment remains subject to the revised statutory maximum of 40 years.") Id.

To support that view, Bowens relied principally on the decision in United States v. Wirsing, 943 F.3d 175 (4th Cir. 2019). Wirsing, however, addresses eligibility for a § 404 sentence reduction and it was issued before Concepcion and Troy. So, Wirsing is of no real help in ascertaining the benchmark because that issue was not up for decision in Wirsing. More recently, Bowens has turned to the decision in United States v. Reed, 58 F.4th 816 (4th Cir. 2023). There is language in Reed that supports Bowens' contention, but Reed, which was decided after Concepcion, and before Troy, did not consider, or decide, how to calculate the benchmark at Step One of the process required by those decisions. Instead, the Fourth Circuit considered, and rejected, the defendant's "argument that the district court abused its discretion by not reducing his sentence to at least the revised statutory maximum contained in the Fair Sentencing Act." Id. at 822. And, the Court of Appeals remanded the sentencing to the

27

district court so that it could explain its decision.

But, the Fourth Circuit, in Reed, did note that the district court had:

> expressly rejected the government's reliance on the drug weight from the Presentencing Report. Instead it correctly concluded that the drug weight charged in the indictment determined Reed's eligibility for First Step Act relief.

Id. at 823 (emphasis added). Thus, the text of Reed, on which Bowens relies, is about eligibility for § 404 relief, not about establishing the Concepcion/Troy benchmark.

For its part, the Government first cites United States v. Smith, 75 F.4th 459 (4th Cir. 2023). In Smith, which was decided after Concepcion and Troy, and cited both decisions, the defendant pleaded guilty to a charge "of conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846 and 8 41(b)(1)(A)." Id. at 463. The presentence report attributed 270.63 grams of crack to the defendant. Id. at 463. The Court of Appeals noted that "[t]he [district] court next adopted the government's argument that Smith's attributable drug weight was 'just nine grams' shy of the 280 gram statutory minimum [for life imprisonment]." Id. at 464. In rejecting Smith's objection to the district court's recalculation of the statutory component of the benchmark, the Fourth Circuit approved the district court's

28

use (at Concepction/Troy Step One) of the weight attributable to Smith in the Presentence Report.[11] The Government recognizes that Smith did not decide the precise issue presented here, but argues that, in Smith, the Fourth Circuit approved using the actual weight attributable to the defendant, not the weight in the indictment, to recalculate the benchmark. And, on that point, the Government is correct.

The Government then relies on the decision in United States v. Jackson, 587 F.4th 1331 (11th Cir. 2023) which was decided on remand from the Supreme Court of the United States following Concepcion. In Jackson, which was tried before the decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), the jury did not make a finding as to the specific drug quantity when it convicted Jackson of violating 21 U.S.C. § 841(a)(1) by possessing with intent to distribute more than 50 grams of crack cocaine. Id. at 1333. Jackson was sentenced to life imprisonment. That sentence was commuted by the President to 300 months imprisonment.

Jackson then moved for reduction of that sentence under § 404. The district court denied the motion and, in so doing, found that the offense involved 287 grams of crack which is above 280

---

[11] In fact, the district court's calculation was an improper benchmark because the calculation was too low. Id. But the correct level, as found on appeal, was determined with reference to the actual attributed weight, not the weight in the indictment.

grams that "still triggers 'the highest penalties' [10 years to life] under the Fair Sentencing Act." Id. at 1334.

In Jackson, the Eleventh Circuit began with the observation that:

> Because the First Step Act retroactively applies the reduced penalties for crack-cocaine offenses under the Fair Sentencing Act, movants ordinarily argue that the drug-quantity finding that determined their statutory penalty at the time of sentencing would permit a lower penalty under the Fair Sentencing Act. Jackson did not make that argument because, at his sentencing hearing, the judge found that the offense involved 287 grams of crack cocaine. That amount—because it is above 280 grams—still triggers 'the highest penalties' under the Fair Sentencing Act.

Id. The Eleventh Circuit then explained:

> We held that the 'as-if' requirement imposes two [relevant] limits. (citations omitted)
>
> * * *
>
> Second, in determining what a movant's statutory penalty would be under the Fair Sentencing Act, the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing. (citation omitted)
> * * *
>
> . . . '[P]revious finding[s] of drug quantity that could have been used to determine the movant's statutory penalty' include 'a previous drug-quantity finding that was necessary to trigger the statutory penalty _.'

30

* * *

> So, we concluded that 'in deciding motions for
> reduced sentences under the First Step Act,'
> the district court may 'rely[] on earlier
> judge-found facts that triggered statutory
> penalties that the Fair Sentencing Act later
> modified.'  (citation omitted)
>
> We held that the district court was bound by
> the judge's earlier drug-quantity finding of
> 287 grams of crack cocaine. (citation omitted)
> Based on this amount, we held that '[t]he
> district court correctly concluded that it
> could not reduce Jackson's sentence because
> his drug-quantity finding meant that he would
> face the same statutory penalty of life
> imprisonment under the Fair Sentencing Act.'
> (citing 21 U.S.C. § 841(b)(1)(A)(iii) (2012).
> Because Jackson's sentence 'would have
> necessarily remained the same,' following the
> consideration of the drug-quantity finding,
> '[a]ny reduction the district court would
> grant would not be "as-if" the Fair Sentencing
> Act had been in effect.'  Id. at 1303.

In other words, Jackson makes clear what Smith suggests:  the maximum sentence in a Concepcion/Troy Step One recalculation is based on the actual drug weight, not the weight in the original indictment.

Bowens' argument seems to be that the test for eligibility (conviction of a covered offense-one for which a penalty was changed by the Fair Sentencing Act) also controls how to determine the statutory maximum punishment in arriving at the

31

Concepcion/Troy benchmark.   But, those are two quite different matters.

Eligibility exists when the Fair Sentencing Act has changed the quantity of crack that animates a sentence range for certain specified offenses.   Determining a benchmark involves deciding what quantity was attributable to the defendant (by the Court or by a jury, depending on whether the conviction is before or after Apprendi) and ascertaining the statutory range for that quantity. That process does not now, and never has, been restricted by the quantity alleged in the indictment except as the process was altered by Apprendi and there is no doubt that Apprendi (a non-First Step Act change in the law) is not applied in the Concepcion/Troy Step One benchmark determination.

The analysis is informed by recalling the state of sentencing when Bowens was sentenced in 1999.   Before Apprendi v. New Jersey, 530 U.S. 466 (2000), the Fourth Circuit clearly was of the view that drug quantity was a sentencing factor, not an offense "element," and so the quantity did not need to "be charged" in the indictment or "proved at trial."   E.g., United States v. Dorlouis, 107 F.3d 248, 252 (4th Cir. 1997).   Therefore, no matter the quantity of drugs trafficked, drug conspiracy defendants were prosecuted for "violating 21 U.S.C. § 846."   United States v. Jones, 14 F.3d 597, 1993 WL 533186, at *3 (4th Cir. 1993)

32

(published).   Then, the court determined the statutory range making a drug quantity finding "by a preponderance of the evidence."   E.g., United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989); United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993) (to "apply § 841(b)" a "district court must . . . determine the quantity of narcotics").   In sum, before Apprendi the sentencing court determined the statutory range based on its "drug quantity" findings without regard to whether a drug quantity was charged in the indictment.   United States v. Smith, 68 F.3d 1154, 1196 WL 293159, at *7 (4th Cir. 1996) (per curiam) because "quantity does not become a substantive element of the crime simply because an amount in indicated in the indictment."   United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994).   That meant that the sentencing court could apply a sentencing range based on a quantity higher than that alleged in the indictment.   See United States v. Ellis, 975 F.2d 1061, 1064 (4th Cir. 1992) ("the amount of cocaine involved in the conspiracy was 1.6 kilograms rather than the 4.4 grams alleged in the indictments."); United States v. Reyes, 40 F.3d 1148, 1149-51 (10th Cir. 1994) (affirming that the mandatory minimum was triggered by the court's finding of 5 kilograms of powder cocaine, even though only "3" kilograms were alleged in the indictment).

To comply with the Concepcion/Troy requirement that, at Step One, the district court may not consider "legal and factual changes" other than the Fair Sentencing Act's revised thresholds means applying the same sentencing approach that was used in 1999. Troy, 64 F.4th at 184 (citing Concepcion, 597 U.S. at 498 n.6); Smith, 75 F.4th at 465. That means that Bowens' offense of conviction is a "violation of 21 U.S.C. § 846," (ECF No. 191 at 1; ECF No. 86 at 1). The elements of that offense were conspiring to distribute any "measurable amount of" a controlled substance. (ECF No. 97 at 1366). And it means ascertaining whether the court-determined drug quantity finding (33 kilograms of crack) exceeds the new threshold for a statutory maximum life sentence (280 grams of crack). 21 U.S.C. § 841(b)(1)(A)(iii). In other words, because the law in 1999 was that the statutory range was based on the 33 kilogram drug quantity finding, the only basis for using the quantity in the indictment to determine the statutory maximum is "'intervening case law,'" in this case Apprendi. And, that cannot be done. Troy, 64 F.4th at 148. Hence, Bowens' statutory maximum remains life because this Court's 33 kilogram quantity finding exceeds the new 280 gram statutory threshold to trigger § 841(b)(1)(A(iii).

In sum, Step One, performed as instructed by Concepcion, Troy, and Smith establishes the statutory maximum at life and the

34

benchmark guidelines range that "anchors" the sentencing proceeding to be:

> Base Level 38
> Possession of Weapon +2
> Role in Offense +3
> Obstruction of Justice +2
> Total Offense Level 43 (45 capped at 43)
> Criminal History Points 8
> Criminal History Category VI[12]
> Guideline Range Life

### (2) Concepcion/Troy Step Two

In this part of a § 404 analysis, the Court, "may (and when raised by the parties, must consider other legal and factual changes when deciding whether to impose a reduced sentence." United States v. Troy, 64 F.4th 184 (quoting Concepcion v. United States, 142 S. Ct. at 7396, 2402, n.6). As explained, Bowens has raised three arguments that, as the parties now agree,[13] are to be considered in the Concepcion/Troy Step Two analysis. Each will be considered in turn.

First, there is Bowens' argument that:

---

[12] At Step Two, the Criminal History Points would be 6 (not 8), and the Criminal History Category would be III (not IV). There would be no recency points (2) because of a change in law. Updated Worksheet in Response to Motion for Compassionate Release (ECF No. 388, p. 2).

[13] The progression of briefing (ECF Nos. 371, 372, 373, 386, 387) and oral argument confirms that agreement.

> The Court Should Resentence Mr. Bowens to No More Than Time Served Because the Constitutionally Applicable Statutory Maximum Is 20 Years and a Reduced Sentence of Time Served Would Avoid Unwarranted Disparity.[14]

(ECF. No. 317, p. 15).

This theory is explained as follows:

> [t]o avoid constitutional questions ab out the application of the Fair Sentencing Act of 2010 to [Mr. Bowens] sentence, the Court should apply a statutory maximum of 20 years the available statutory maximum when a jury makes no finding as to the type and quantity of drug that would trigger a greater statutory range.

(Second Renewed Motion, ECF No. 371, p. 15). We locate the perceived authority for the putative 20 year maximum at the end of Section E which merely cites 21 U.S.C. § 841(a)(1)(C), without explanation. (ECF No. 371, p. 19, 3d line from the top of the page). To support that theory, Bowens cited United States v. Promise, 255 F.2d 150, 156-57 (4th Cir. 2001). Promise cites Apprendi v. New Jersey, 530 U.S. 446 (2000) and Alleyne v. United States, 570 U.S. 99 (2013). In particular, says the Second Renewed Motion, citing Promise:

> Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a

---

[14] ECF No. 371, pp. 15-19.

> specific threshold quantity must be treated as
> an element of an aggravated drug trafficking
> offense, i.e., charged in the indictment and
> proved to the jury beyond a reasonable doubt.

(ECF No. 371, p. 15).  Bowens uses that statement to argue that,

for Count One, "the Constitutionally Applicable Statutory Maximum

Is 20 Years."  (ECF No. 371, pp. 15-18).

But, relying on Washington v. Remenco, 548 U.S. 212 (2006),

the Fourth Circuit since has held that "'elements and sentencing

factors must be treated the same'" in constitutional analysis.

United States v. Legins, 34 F.4th 304, 321-24 (4th Cir. 2021).[15]

Therefore,

> [t]he Government's failure to include a
> sentence enhancing factor in the indictment
> and jury charge should be treated exactly like
> its failure to include any other element of an
> offense [subject to harmless error analysis].
> And the proper way to perform harmless-error
> analysis in both cases is to ask whether proof
> of the element is 'overwhelming' and
> uncontroverted.

Id.  And, just as the Fourth Circuit found that the proof of crack

as the object of the conspiracy in Count One was overwhelming and

uncontroverted, so too was the evidence of the quantity of crack

cocaine (33 kilograms) which formed the predicate of both the

statutory maximum and the crack guidelines upon which Bowens was

---

[15] In so holding, the Fourth Circuit recognized that Promise was
no longer viable.

sentenced.  So strong was that proof that, neither at trial nor at sentencing, was there any evidence offered to contradict the overwhelming proof that the quantity of crack cocaine attributable to Bowens was 33 kilograms.  So, this change in the law – <u>Apprendi</u> and <u>Alleyene</u> (decided after Bowens was tried and sentenced) – does not, as Bowens contends, limit the maximum sentence to 20 years imprisonment.

The second argument which is to be assessed in <u>Concepcion/Troy</u> Step Two is that:

> Even if the Court Determines the Applicable Statutory Maximum to Be 40 Years Rather Than 20 Years, the Court Should Impose a Reduced Sentence of No More than 348 Months.

(ECF No. 371, p. 19).  As presented in Step Two, this is actually a variance argument which opens with the following statement:

> [s]hould the Court disagree, however, that the 20-year statutory maximum applies, we request that the Court <u>vary downward</u> and sentence Mr. Bowens to no more than 348 months-effectively a time-served sentence after accounting for good time credit. . . .

(ECF No. 371, p. 19).

As explained previously,[16] the Second Renewed Motion does not explain how, as the caption asserts, the statutory maximum could be 40 years.  Even more confusing is that the Government's response

---

[16] This argument was presented in Step One to argue for a 40 year maximum.  It was rejected there.

brief (ECF No. 372) contains a heading that reads "Bowens' post-Fair Sentencing Act statutory maximum is 480 [40 years] months." (ECF No. 372, p. 1).  The Government's brief does not explain why that might be so; but, in arguing that "applying Apprendi to Bowens' case would have no meaningful effect," (ECF No. 372, p. 5), the Government makes the unexplained statement that "the jury would have found the relevant quantity sufficient to trigger the 40-year maximum."  (ECF No. 372, p. 5).

Whatever was intended by the heading and the opaque statement in the Government's response brief (ECF No. 372, pp. 1 and 5), the Government's Supplemental response (which addressed and applied the rules of Concepcion) retrenched from the unexplained heading (and sentence) made earlier, stating that:

> In its 2022 response, the government suggested that the new statutory maximum under the Fair Sentencing Act was 480 months.  Dkt. 372 at 1-6. Subsequent caselaw makes clear that the statutory maximum remains life imprisonment and, regardless, that the Court need not reduce a sentence to the 'revised statutory maximum.'  See e.g., Reed, 58 F.4th at 822.

(ECF No. 386,  p. 7, n.2) (emphasis added).

And, in his Supplemental Reply Brief (ECF No. 387), Bowens did not mention the 40 year maximum that animates the variance argument.  At oral argument, and in post-argument briefing, Bowens resurrected the argument that the statutory maximum is to be

determined by the quantity alleged in the indictment. And, 50 grams falls in the Fair Sentencing Act 5-40 year range which is triggered by 28 grams or more (and 50 grams is covered by "or more"). For the reasons set forth above, the Court has rejected that view).

Now, to the requested variance argument presented in the Second Renewed Motion and in the reply brief. (ECF No. 373, p. 1; EcF No. 387, p. 3).

Bowens offers two reasons in support of the request for a variance.[17] First, Bowens no longer qualifies as a career offender and is thus in Criminal History Category III. The parties agree on that Criminal History Category because Bowens: (a) no longer qualifies as a career offender; and (b) would not now receive two "recency" points for joining the conspiracy within two years of release from prison. (ECF No. 388, p. 2; ECF No. 386, p. 2). It is true that Bowens' Criminal History Category has changed and that he is no longer subject to the Career Criminal Enhancement. Those changes were wrought by changes in the law that can be

---

[17] Bowens does not explain how the law of variance comes into play in Step Two. Nor does the Government. Generally, variances are determined by reference to the factors in 18 U.S.C. § 3553(a). However, since the Government makes no objection to consideration of it in Step Two, and taking into account the instructions in Concepcion and Troy, the Court will assess the position on its merits as part of Step Two.

considered in Step Two.  However, those changes do not warrant, alone or considered with Bowens' rehabilitation argument, a reduction of the sentence.  That is because Bowens sat at the top ranks of a vast drug conspiracy and managed its regional operations in North and South Carolina.  That organization was vast in scope and poured drugs in enormous amounts into the areas in which it operated.  And, the Poison Clam was violent.  All that means that a life sentence is entirely justified, notwithstanding the changes in the law on which Bowens relies.[18]

Second, Bowens asserts that, "because there is no justifiable basis for any disparity between the criminal treatment of crack and powder cocaine, the Court should consider what the advisory guideline range would be if crack cocaine offense offenses were punished the same as powder cocaine offenses."  (ECF No. 371, p. 19).  That contention asks the Court to disregard the current, Congressionally approved, 18:1 ratio because "the current 18:1 ratio is every bit a flawed as the original 100:1 ratio."  (ECF No. 371, p. 21).  Bowens' invitation is based on (a) a Department of Justice instruction to prosecution to tell "district courts that the Department supports elimination of the powder-to-crack [18:1 ratio] disparity; (b) a Department of Justice Statement made

---

[18] As explained below, the § 3553(a) factors support that view.

to Congress when it was considering (but did not make) a possible change to the ratio; and (c) the decision in United States v. Williams, 788 F. Supp.2d 847, 882 (N.D. Iowa 2011). (ECF No. 371, pp. 21-22).

The Department of Justice policy has been rescinded. Congress chose not to change the 18:1 ratio. And, although courts have the authority to vary categorically from the guidelines based on a policy disagreement, they are not required to do so. And, the simple fact is that Congress and the Sentencing Commission have heard the arguments made by Bowens. Neither has found those arguments persuasive. Nothing in Williams persuades that it is appropriate for a district court to arrogate unto itself a legislative function, much less one as to which the legislature has specifically spoken.[19]

In a recent filing, Bowens continues to ignore the difference between the Sentencing Commission and Congress. (ECF No. 387, pp. 3-4). But, in so doing, he does not offer authority that would permit a district court to substitute its policy view for that of

---

[19] There is quite a difference between a categorical policy disagreement between a district court and the Sentencing Commission and a like disagreement with Congress. The decisions in Kimbrough does not allow district courts to override Congress even where such a disagreement exists.

Congress even where the law enacted by Congress is based on a position recommended by the Sentencing Commission.

In reality, the request for a variance sentence is just a vehicle for presenting the argument that, when the Court is applying the principles of Concepcion and Troy, the district court's view on a policy question can be substituted for that of Congress.   The Court declines to adopt that view because, while courts are free to disagree with the Sentencing Commission on a policy view, the same is not true of policy expressed by Congress.

The third argument presented under Concepcion/Troy Step Two is: "Other Defendants Sentenced to Life Imprisonment in This District Under the Mandatory Guidelines in Cases Much Like Mr. Bowens's Case Have Had Their Sentences Reduced Pursuant to § 404 of the First Step Act."   (ECF No. 371, pp. 23-25). And, says Bowens, "reducing a sentence of life imprisonment imposed under then-mandatory Sentencing Guidelines to time served would not be unprecedented in this district," (ECF No. 371, p. 23) pointing to sentence reductions in four cases.

First, Bowens cites United States v. Johnson, No. 1:98cr283 (ECF No. 174, 07/03/19 (E.D. Va.)).   Neither the record nor the decision in Johnson discloses that Johnson's activities were as extensive as Bowens or that Johnson was involved in a drug-trafficking as vast and violence-laden as the drug-trafficking

43

operations of the Poison Clan, in which Bowens played a leading role as surrogate for the Clan's leader, Dean Beckford.    In addition, it appears that the rationale in <u>Johnson</u> was driven substantially by what the opinion granting the reduction described as "a troubling disparity between the Guideline ranges for crack cocaine and those for powder cocaine" which, as noted above, is a matter already addressed by Congress (as to the 100:1 ratio) and is a disagreement with Congress (as to the 18:1 ratio) and that, for reasons previously given, provides no assistance in the analysis here.    In sum, there is no real comparison between <u>Johnson</u> and the record in this case.

Next Bowens cites <u>United States v. Hardnett</u>, 417 F. Supp.3d 725 (E.D. Va. 2019).    The factual record in <u>Hardnett</u> does not factually compare with the substantive or temporal extent of the offense conduct in which Bowens engaged.    Nor was the drug-trafficking operation there comparable in scope to that of the Poison Clan of which Bowens was a leading figure.

Bowens then cites <u>Wright v. United States</u>, 425 F. Supp.3d 588 (E.D. Va. 2019).    The facts in <u>Wright</u> show a conspiracy that was longer than the one in which Bowens was engaged, but the amount of drugs attributed to Wright were 150 grams and 1/8 ounce of cocaine base (<u>id.</u> at 598), much less than the 33 kilograms attributed to Bowens.    So the amount of drugs attributable to Wright and those

44

attributable to Bowens are radically disparate.  The reduction appears also to have been made in perspective of the lack of stability that had marked Wright's early life, a factor which does not appear in Bowens' case.  That conclusion cannot be made in this case.  In Wright, the decision to reduce the sentence appears to have been substantially driven by Wright's post-conviction rehabilitation and, sub silento, the conclusion that those rehabilitation efforts outweighed the quite different offense conduct in that case.  That just is not the case here.

In his supplemental reply (ECF No. 387), Bowens adds other cases.  To start, he cites to United States v. Russell, 729 F. Supp.3d 584 (E.D. Va. 2024).  It appears that, in Russell, the defendant had the same offense level on the crack cocaine charge as did Bowens.  However, other than that, there is nothing to suggest that the facts surrounding the operations of the Poison Clan and Bowens' involvement in it were like the rather limited activity of the defendant in Russell.[20]  Also, the decision in Russell suggests that the defendant's post-conviction rehabilitation was thought to have outweighed the offense conduct in which he engaged.

---

[20] It does appear that Russell engaged in some violence.

Bowens then points to United v. McKenzie, No. 1:91cr429-1, E

CFNo. 289.  The decision in that case does not reflect how, if at

all, the degree of rehabilitation argued by the defendant was

measured against the nature and extent of the offense conduct,

other than calling the offense conduct "serious."  That simply is

not a sufficient ground upon which to find that McKenzie's case is

similar to this one.

Bowens also cites United States v. Bramwell, No. 1:91cr492-

2, ECF No. 237 (E.D. Va. June 2, 2020).  The record in Bramwell

suggests a similarity of the offense conduct in which Bramwell and

Bowens engaged, insofar as their respective roles in their

respective drug-trafficking organizations.  And, it is correct

that, in Bramwell, the Court was persuaded that the defendant's

post-conviction rehabilitation outweighed the seriousness of the

offense conduct, so that Bramwell's sentence was reduced from life

imprisonment to 360 months.  But, the opinion granting the

reduction shows that Bramwell was held accountable for only "at

least 15 kilograms of crack cocaine," half of the quantity that

was attributable to Bowens.[21]

---

[21] Bowens refers to a "Paul" decision, but it is not discussed or
cited.

That brings the analysis to Bowens' fundamental theory in support of a reduced sentence: rehabilitation which is presented in the Second Renewed Motion under the heading: **Mr. Bowens Fully Deserves to be Resentenced to a Sentence Far Lower Than Life Imprisonment.** (ECF No. 371, pp. 9-18).

The record reflects that Bowens has engaged in educational opportunities to improve vocational skills, life management skills, and parenting skills. He has acquired computer skills and has taken business information and processing courses and received training in OSHA industry and health and safety. He has learned to be a custodial technician and taken course work to prepare for a commercial driver's license and trained to become a forklift operator. Thereby, as Bowens put it, he "has positioned himself to be able to work in a number of different fields."

Bowens has also taken courses in life management skills, such as non-criminal thinking, stress management, and self-discovery and drug abuse education. He has also completed a self-improvement and pre-release program training. In addition, Bowens, who is a parent of nine grandchildren and a grandfather, has taken several specialized programs addressing techniques and problems related to rearing children and he has taught classes in this area.

Bowens' work history within the prison is sufficiently significant that he was selected to be transferred from USP Allenwood to USP Lewisburg to fill a need for workers at Lewisburg. He is lauded by his supervisors for his work and has received an orderly position which, according to the record, "is only given to the very best workers." (ECF No. 371, p. 19).

Bowens has completed a PATTERN assessment which places him in the minimum category of those likely to risk recidivating, both as to violent crime and generally. (ECF No. 371, Ex. 3). And, he has submitted almost 50 letters of support from friends and family and letters from other inmates that demonstrate mentoring as well as parenting from afar.[22] The United States does not challenge the showing by Bowens and argues that, although rehabilitation effort is "commendable, it should not outweigh the nature and seriousness of the offense." (ECF No. 372, p. 9).

A fair assessment of the record respecting Bowens' rehabilitation establishes that he has put the time that he has spent in prison to productive use and has learned a number of skills which would assist him in being a productive member of society when he returns to it. The record also reflects that

---

[22] Although Bowens has not been without some disciplinary infractions while in prison, his record on that score is unremarkable, especially for one serving a long sentence.

48

Bowens has resisted the temptation to become embittered because he is serving a life sentence. Viewed as a whole, Bowens' rehabilitation efforts are, indeed, significant and he is to be commended for them. However, those efforts are insufficient to warrant the granting of a motion to reduce the sentence when measured in perspective of the sentencing factors in 18 U.S.C. § 3553(a).

> ### (3) The Application of the Factors Under 18 U.S.C. § 3553(a)

Neither party really addresses the 3553(a) factors except to the extent that they are addressed by the Government's argument respecting the nature and consequences of the offense and Bowens' rehabilitation arguments which are part of the defendant's history and characteristics (18 U.S.C. § 3553(a)(a)). Both of those topics have been fully explored and will not be repeated here except to say that the seriousness of the offense factor strongly militates against a variance and the history and characteristics of the defendant which are presented on the basis of rehabilitation, militates in favor of reduction. However, Bowens' criminal history before joining the Poison Clan (the history and characteristics of the defendant) tends to move the balance to a negative assessment, but not entirely. Hence, the rehabilitation argument still militates in favor, slightly, of reduction.

The extremely serious nature of this offense and the breadth and depth of the conduct in which Bowens engaged and managed necessitates a sentence that serves as a deterrence to criminal conduct, both by Bowens and by others who would engage in such activity. And, although the drug du jour has changed from crack to more modern, more addictive and even more dangerous drugs, such as fentanyl, the existence of criminal gangs to distribute drugs still exist. So, § 3553(a)(2)(B), the deterrence factor, continues to be very important and militates against a reduction of Bowens' sentence. And, for the same reasons, so too does the factor of promoting respect for the law. Section 3553(a)(2)(A).[23]

Bowens has made substantial efforts at rehabilitation. That record teaches that § 3553(a)(2)(C), protecting the public from further crimes of the defendant, is a factor that does not cut against sentence reduction.

Of course, the Second Renewed Motion cannot be considered without assessing the need for the sentence to provide just punishment for the offense, mindful that a sentence needs to be sufficient, but not greater than necessary, to satisfy the §

---

[23] The Court has considered the kinds of sentences and sentencing range established and there is no demonstrated need to provide Bowens with any educational or vocational training, medical care or other correctional treatment so § 3553(a)(2)(D) does not come into play.

3553(a) factors. That, indeed, is the thrust of the entire argument made by Bowens. In essence, he is contending that a life sentence is unjust because of his rehabilitation, because of a change in societal reaction to crack cocaine manifest in the Fair Sentencing Act and the First Step Act, and because two of the factors that were considered in assessing the original sentence (a career offender and recency) that no longer should be considered in assessing the sufficiency of the sentence. That contention, however, is misplaced. What drove the sentence was the vast quantity of crack cocaine that was attributable to Bowens and his significant role in the Poison Clan, a violent, and wide-spread drug-trafficking organization, together with the enhancement for a gun. Indeed, he is eligible for the same sentence today without the career offender adjustment or the recency adjustment.

In sum, although some of the § 3553(a) factors provide some support for reducing Bowens' life sentence, consideration of all the factors does not provide a sufficient basis for reducing his sentence. When imposed, the sentence imposed was, in perspective of all sentencing factors, sufficient, but not greater than necessary, to achieve the sentencing objectives of § 3533(a). It remains so today.

51

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S SECOND RENEWED MOTION TO REDUCE SENTENCE PURSUANT TO § 404 OF THE FIRST STEP ACT OF 2018 (ECF No. 371) will be denied.

It is so ORDERED.

_____ /s/   REP
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: October 24 , 2025